IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **TIMOTHY CALHOUN, et al.**, <br><br> *Plaintiffs*, <br><br> v. <br><br> **TJM TREVOSE, LLC, d/b/a RADISSON HOTEL**, <br><br> *Defendant*. | **Case No. 2:22-cv-3852-JDW** |

## MEMORANDUM

Sometimes, people act badly. But not every negative interaction is a product of discrimination. Timothy and Thomas Calhoun have evidence that employees at the Radisson Hotel in Trevose, Pennsylvania, treated them badly, and for purposes of summary judgment, I must credit that evidence. But they have no evidence that the poor treatment was due to their race. They just have the allegations in their Complaint, and those allegations don't create a triable issue of fact. Because there's no evidence of racial discrimination, I will grant TJM Trevose, LLC's summary judgment motion with respect to the Calhouns' claims under both 42 U.S.C. § 1981 and the Pennsylvania Human Relations Act.

I. **BACKGROUND**

　　A. **Facts**

Pursuant to my Policies and Procedures, the Parties have submitted a joint Statement Of Undisputed Material Facts. For many of the key facts, the Calhouns dispute asserted fact based only on the allegations in their Complaint. (*See, e.g.*, ECF No. 23 at ¶¶ 5, 7, 8, 11-14, 18, 21-24, 27, 34.) Federal Rule of Civil Procedure 56 requires a party opposing a summary judgment motion to do so by pointing to "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations ..., admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c)(1)(A). "[t]he non-moving party may not merely deny the allegations in the moving party's pleadings; instead, he must show where in the record there exists a genuine dispute over a material fact." *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007). For allegations for which the Calhouns have not offered admissible evidence, I treat those facts as undisputed. If there is a legitimate factual dispute, I have resolved it in the Calhouns' favor. *See Scott v. Harris*, 550 U.S. 372, 378 (2007). With those standards in mind, I have reached the following factual narrative.

On August 17, 2019, the Calhouns checked into the Radisson Hotel in Trevose, PA with their wives. TJM Trevose, LLC ("TJM") operates the hotel. The Calhouns had stayed at this hotel on many occasions without incident.

The hotel was overrun that day—it had no vacancy and was hosting ten events. Around 9:45 p.m., two groups of patrons left the hotel's outdoor bar without paying. To prevent others from dining and dashing, the hotel closed the outdoor bar and began requiring patrons to pay for food and drink when they placed their orders.

Around midnight, the Calhouns came to the bar to place a food order. A male bar tender asked, "where is your money? where is your money?" (ECF No. 24-3 ¶ 7.) The Calhouns did not understand this to be a request for prepayment because, during past stays, no one asked them to pay before ordering. The Calhouns walked away thinking they had placed their order. When their food never arrived, though, they returned to the bar to inquire about their order. The Calhouns allege that a female bar tender replied with an obscene gesture. The Calhouns then went to the lobby to complain, where they spoke with the on-duty manager, Ms. Ruane.

After the Calhouns complained, Ms. Ruane spoke to the bar staff and asked them to help place the Calhouns' order. However, the female bartender began to instigate other White customers against the Calhouns. The night ended with security escorting the Calhouns from the bar to their rooms. There is no evidence that hotel security removed anyone else from the bar in response to the altercation.

Hotel staff called the police during the altercation at the bar. When the officers arrived, the Calhouns were already in their rooms. The officers spoke with Timothy Calhoun and told him he should stay there for the rest of the night. The next morning,

Timothy Calhoun went to the lobby and requested a copy of the incident report from Ms. Ruane. The Parties dispute Mr. Calhoun's demeanor during this interaction but agree that it ended when Ms. Ruane said that she would call the police again if he did not leave her alone. The Calhouns completed their stay at the Radisson as planned and without further incident. Thomas Calhoun and his wife checked out on August 19, 2019; Timothy Calhoun and his wife checked out on August 20, 2019. The Calhouns claim that they did not leave their rooms for the remainder of their stay, except to get food, for fear of having the police called on them.

**B.     Procedural History**

The Calhouns filed charges of discrimination against TMJ with the Pennsylvania Human Relations Commission ("PHRC") on May 29, 2020. Six months later, the PHRC issued a right to sue letter. The Calhouns filed their Complaint against TMJ on September 28, 2022. The Complaint asserted three claims: Count I – Section 1981 Race Discrimination; Count II – PHRA Race Discrimination; and Count III – Breach Of Contract. TMJ filed a motion to dismiss. I granted the motion as to the breach of contract claim but denied it as to the racial discrimination claims.

On January 4, 2023, I issued a Scheduling Order that required the parties to complete discovery by May 5, 2023. No one moved for an extension of that deadline. On April 26, 2023, I had a call with the Parties concerning the status of the case. During that call, Plaintiffs' counsel advised me that Thomas Calhoun had been jailed in Georgia and

4

was awaiting a transfer to Ohio to face a parole violation hearing. As a result, the Calhouns had not taken any discovery. I told them to do so, and that if the Parties agreed to take discovery after the deadline, I would not prevent them from doing so. But I did not modify the Scheduling Order at that time because I determined that Plaintiffs' counsel had not been diligent in pursuing the claim.

Despite my warning, Plaintiffs' counsel did not move quickly following that call. Instead, she waited until after the close of discovery, on June 6, 2023, to serve notices of deposition. Not surprisingly, TJM objected. On June 21, 2023, the Calhouns filed a motion to compel discovery. After a call with counsel, I denied the Motion because the deadline for discovery had passed. On July 7, 2023, TJM filed a summary judgment motion. The Motion is ripe for disposition.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) permits a party to seek, and a court to enter, summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "[T]he plain language of Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

### III.   ANALYSIS

Section 1981 prohibits racial discrimination in the making and enforcement of contracts. *See* 42 U.S.C. § 1981. To prove discrimination under Section 1981, a plaintiff must prove intentional discrimination, which can come with direct or indirect evidence. Where, as here, a plaintiff offers only indirect evidence, courts apply the familiar burden-shifting framework under *McDonnell Douglas Corp. v.* Green, 411 U.S. 792 (1983). (Although courts usually use the *McDonnell Douglas* framework in employment cases, the Third Circuit and other courts have applied it in Section 1981 cases involving non-employment contracts. *See, e.g.,*, *Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261, 267-68 (3d Cir. 2010); *Maultsby v. RIH Acquisitions NJ, LLC*, No. Civ. A. No. 09-4376, 2011 WL 6779556, at * 4 (D.N.J. Dec. 27, 2011).) Under that framework, the Calhouns must establish a *prima facie* case of discrimination, TJM must offer a legitimate, nondiscriminatory reason for its conduct, and the Calhouns must then offer evidence that TJM's evidence is pretextual. *See Anderson*, 621 F.3d at 270-71.

Courts evaluate claims under Section 1981 and the PHRA coextensively. *See Anderson v. Boeing Co.*, 694 Fed. App'x 84, 86 n.4 (3d Cir. 2017). Although I have not found a case that holds that the PHRA and Section 1981 are coextensive outside of the employment context, Pennsylvania courts have said that when the PHRA and a federal statute "deal with similar subject matter and are founded on similar legislative goals," courts should interpret them together. *Imler v. Hollidaysburg Am. Legion Ambulance*

*Serv.*, 731 A.2d 169, 173 (Pa. Super. Ct. 1999). The PHRA and Section 1981 deal with similar subject matter and are founded on similar legislative goals, even outside the employment context, so I will interpret them coextensively.

### A.   *Prima Facie* Case

To establish a *prima facie* case of discrimination under Section 1981, the Calhouns must show three things: (1) that they belong to a racial minority; (2) TJM's intent to discriminate on the basis of race; and (3) discrimination concerning one or more of the activities enumerated in Section 1981, including the right to make and enforce contracts. *See Brown v. Philip Morris, Inc.*, 250 F.3d 789, 797 (3d Cir. 2001). TJM concedes the first element but disputes the second and third.

#### 1.   Intent to discriminate

There is no evidence that TJM intended to discriminate on the basis of race. No member of the hotel's staff mentioned the Calhouns' race or anything race-related during their interactions. And the Calhouns did not provide any evidence to refute Ms. Ruane's testimony that they were subject to the same rules as the hotel's White patrons.

The Calhouns' arguments to the contrary are unpersuasive. They don't dispute that TJM adopted a policy of requiring upfront payment on the night in question. Instead, they argue that they did not understand the policy because it wasn't conveyed to them. But neither their confusion nor the possibility of a miscommunication between them and the hotel staff demonstrates discrimination. The Calhouns assert that the hotel staff treated

them in a way that was more demeaning than the way that the staff treated White patrons, but they have no evidence of that. They have only their Complaint and the argument in their brief. Neither is evidence. And the evidence that they do have—Timothy Calhoun's affidavit—is silent both on whether the hotel required White patrons to prepay for their food and drink. (This lack of evidence is presumably in part due to the Calhouns' failure to take discovery during the discovery period.)

The Calhouns also claim that other events suggest a discriminatory motive on the part of hotel staff, including the fact that security intervened and escorted them to their rooms. But the undisputed facts are key here. Ms. Ruane tried to help the Calhouns place their order. Then, when Ms. Ruane looked into what was happening, she confirmed that the hotel staff was following the hotel's policy to obtain prepayment from all guests and that there was nothing to indicate that the hotel staff treated the Calhouns differently than White patrons. (*Id.* at ¶¶ 13, 14.) The Calhouns dispute all of this, but they rely on their Complaint, not admissible evidence, to do so, and that's not enough. Those facts neuter any implication of racial motive in the hotel's actions.

The only case on which the Calhouns rely, *Henderson v. Jewel Food Stores, Inc.*, No. 96 C 3666, 1996 WL 617165 (N.D. Ill. Oct. 23, 1996), is distinguishable. In that case, a court held that the plaintiff's allegations that defendant's employee had said "I know you people," understood as a reference to plaintiff's race, coupled with an unfounded complaint to the police was sufficient to survive a motion to dismiss. But in this case, no

one referenced the Calhouns' race, and an admitted physical altercation occurred, which justified contacting the police regardless of who started it. And, unlike *Henderson*, this case is before me on summary judgment, when the Calhouns need admissible evidence, not just allegations, to proceed.

### 2. Discrimination in making a contract

The Calhouns also have not shown that TJM engaged in actual discrimination because they have not shown that TJM prevented them from engaging in a contract. When the Calhouns tried to place an order at the bar, the bartender asked them for their money. That is, if they offered a form of payment, the hotel would have served them. After they complained to Ms. Ruane, Ms. Ruane spoke to a bartender to facilitate the Calhouns' order. Only after the Calhouns started an altercation did the hotel staff remove them from the bar. On these facts, no reasonable factfinder could conclude that the hotel prevented the Calhouns from engaging in a transaction. To the contrary, the hotel was wiling to serve them on the same terms as everyone else there that night, as long as they weren't disruptive. Once tempers flared, though, the hotel did not have a continuing obligation to serve the Calhouns at the expense of safety and order in a crowded restaurant.

The Calhouns do not address any of this in their Opposition. They just argue that they did not get the food and drink that they ordered, so the hotel must have prevented them from engaging in a transaction. It's not that simple, though. They needed some

9

evidence to contest the facts between the time they tried to order and the time they had to leave the restaurant. They don't have any.

### B.     Pretext

Even if the Calhouns could make out a *prima facie* case of discrimination, their claims would fail. TJM wanted to avoid nonpayment at a crowded bar, so it required all patrons to pay up front. That's a legitimate, nondiscriminatory reason for its conduct. The burden then shifts back to the Calhouns to demonstrate pretext.

To establish pretext, the Calhouns must point to "evidence that could cause a jury either [to] (1) disbelieve the employer's articulated legitimate reasons[,] or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the … action." *Fowler v. AT&T, Inc.*, 19 F.4th 292, 299 (3d Cir. 2021). They have done neither. The Calhouns do not point to any evidence that would cause a jury to disbelieve TJM's reason for requiring prepayment on the night in question. They argue that the hotel's treatment of them demonstrated "negative stereotypes of [B]lack men as being prone to aggression." (ECF No. 25-1 at 11.) But the support for that proposition is their response to Paragraph 18 in the Statement Of Facts, which in turn relies only on the Complaint. Because the Calhouns have not identified admissible evidence that might support their argument about racial stereotypes motivating the hotel, they cannot demonstrate pretext.

## IV. CONCLUSION

"[S]ummary judgment is essentially 'put up or shut up' time for the non-moving party[.]" *Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006). The Calhouns did not put up. Their limited evidence does not show an intent to discrimination, actual discrimination, or pretext. Therefore, I will grant TMJ's Motion. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.

August 14, 2023